IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | |
|---|---|
| VARIANT HOLDINGS, LLC AND VARIANT, INC.<br><br>  *Plaintiffs*,<br><br>  v.<br><br>Z RESORTS LLC D/B/A HOTEL ZAZA; Z RESORTS MANAGEMENT, L.L.C. D/B/A HOTEL ZAZA; Z RESORTS, INC. D/B/A HOTEL ZAZA; TRANSFORMATION 5701, L.P. DBA HOTEL ZAZA HOUSTON; GIVENS-RECORDS DEVELOPMENT, LTD D/B/A HOTEL ZAZA DALLAS; ESA P PORTFOLIO L.L.C. D/B/A EXTENDED STAY HOTELS; HVM, LLC D/B/A EXTENDED STAY HOTELS; EXTENDED STAY AMERICA, INC. D/B/A EXTENDED STAY HOTELS; NEXTAG, INC.; PRICE WATCH CORP.; ROSEWOOD HOTEL INVESTMENTS, INC.; ROSEWOOD HOTELS AND RESORTS, L.L.C.; RRCC, L.P. D/B/A ROSEWOOD CRESCENT HOTEL; ROSEWOOD PROPERTY COMPANY D/B/A ROSWOOD MANSION ON TURTLE CREEK; THE CARLYLE, LLC D/B/A THE CARLYLE, A ROSEWOOD HOTEL; STREETPRICES.COM, INC. D/B/A STREETPRICES.COM CORP. D/B/A STREETPRICES.COM; TANGLEWOOD RESORT PROPERTIES, INC. D/B/A TANGLEWOOD RESORT; TRAVELNET SOLUTIONS, INC. AND YELP! INC.<br><br>  *Defendants*. | Civil Action No. 2:11-cv-00290-TJW<br><br><br><br><br><br><br><br>JURY TRIAL DEMANDED |

**MOTION TO SEVER AND TRANSFER**

# **TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................................................................ 1

II.   BACKGROUND ................................................................................................................. 2

   1.  Variant's Complaint for Patent Infringement Distinguishes Between Two Sets of Defendants. ...................................................................................................................2

   2.  The Hotel Defendants. ..................................................................................................3

   3.  The Consumer Site Defendants. ...................................................................................4

   4.  Variant. ..........................................................................................................................5

III.   ARGUMENT ..................................................................................................................... 5

   1.  Joinder Is Improper in a Patent Case Where the Accused Products and Asserted Claims are Categorically Different. .............................................................................5

   2.  The Consumer Site Defendants' Products are Dramatically Different from Those of the Hotel Defendants. ...............................................................................................7

   3.  The Center of Gravity of Variant's Case Against the Consumer Site Defendants Is in Northern California. .............................................................................................9

   4.  It Would Be Clearly More Convenient to Litigate the Claims Against the Consumer Site Defendants in the Northern District of California...................................10

      a.  Variant Could Have Filed Its Claims Against the Consumer Site Defendants in the Northern District of California............................................................10

      b.  The Private Interest Factors Favor Transfer to the Northern District of California. ...........................................................................................................11

      c.  The Public Interest Factors Favor Transfer to the Northern District of California. ...........................................................................................................11

IV.   CONCLUSION................................................................................................................ 12

Pursuant to Rules 20 and 21 of the Federal Rules of Civil Procedure and 35 U.S.C. § 1404(a), Defendant Yelp! Inc. ("Yelp") respectfully moves, by and through the undersigned counsel, to sever the claims of Plaintiffs Variant Holdings, LLC and Variant, Inc. (collectively "Variant") against Defendants Yelp, Nextag, Inc., and Price Watch Corp. (collectively the "Consumer Site Defendants")[1] and transfer the severed claims against the Consumer Site Defendants to the United States District Court for the Northern District of California.

## I.   INTRODUCTION

This is an unusual case. In its complaint Variant has divided the defendants into two distinct sets, and has accused each set of infringing different patent claims for different reasons. The vast majority of the defendants are hotel companies, and include such companies as Extended Stay America and Rosewood Resorts (the "Hotel Defendants"). However, Variant has also sued a handful of companies that operate websites that allow users to compare prices and customer reviews of all types of products or services, including Yelp and three other websites (the "Consumer Site Defendants"). Variant has asserted one set of claims against the Hotel Defendants and a different set of claims against the Consumer Site Defendants. While many of the Hotel Defendants are located in Texas (and one is located in this District), most of the Consumer Site Defendants are located in Northern California and none of them is in this District. By joining claims against these two unrelated sets of Defendants in a single suit, Variant seeks to end-run the rules for venue selection. Yelp asks this Court to sever the Consumer Site Defendants from this case and transfer Variant's claims against them to the Northern District of California. *See Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546, 553

---

[1] Plaintiff voluntarily dismissed a fourth Consumer Site Defendant, StreetPrices.com, Inc. (d/b/a StreetPrices.com Corp. d/b/a StreetPrices.com) on September 28, 2011.

(E.D. Tex. 2009) (severing and transferring defendants to California notwithstanding the presence of several local defendants).

## II. BACKGROUND

1. Variant's Complaint for Patent Infringement Distinguishes Between Two Sets of Defendants.

Variant filed its complaint on June 16, 2011, accusing nineteen defendants of infringing U.S. Patent No. 7,624,044 ("the '044 Patent"). Several defendants are related because, for example, they operate different entities associated with the same brand of hotel (s*ee*, *e.g.*, Doc. No. 1 ("Complaint") at ¶¶ 7, 10 & 17), so there are effectively nine defendants. Even a cursory review reveals that these nine defendants fall into two distinct sets. The first set is made up of the Hotel Defendants (the ZaZa Hotel defendants, the Extended Stay Hotel defendants, the Rosewood Hotel defendants, the Tanglewood Resort, and TravelNet Solutions[2]). These entities operate hotels and websites for booking rooms in those hotels. The second set is made up of the Consumer Site Defendants (Nextag, Price Watch and Yelp). These entities operate websites for comparing products or businesses.

Variant accuses each of the Hotel Defendants of infringement by making, using or selling apparatuses that "provide customer information regarding rentals."[3] (Complaint at ¶¶ 29, 30, 33,

---

[2] TravelNet Solutions does business by the name VEM Global but for simplicity is referred to herein by the name TravelNet as identified in the complaint. *See* TravelNet Solutions Inc. – Now Doing Business as VEM Global, LLC, http://ralblog.vemglobal.com/2010/06/travelnet-solutions-inc-%E2%80%93-now-doing-business-as-vem-global-llc.html (July 17, 2010) (reproduced in Ex. E).

[3] On September 15, 2011, just before the new patent law on joinder took effect, Variant filed two more suits in the Eastern District, asserting the '044 Patent against 83 additional defendants. Case Nos. 2:2011-CV-422 and 2:2011-CV-427 (E.D. Tex.). Variant accuses all 83 new defendants of infringing by "provid[ing] customer information regarding rentals." Additionally, all 83 of the new defendants are either hotel companies or car rental companies, and Variant has accused their websites for "renting rooms" and "renting vehicles," respectively.

35 & 36.) This allegation matches up with Claim 14 of the '044 Patent, which requires that "at least one of said computerized central communications facilities is adapted to provide said customer information regarding rentals." By contrast, Variant accuses each of the Consumer Site Defendants of infringement by making, using or selling apparatuses that allow customers to "request additional information relating to goods or services." (Complaint at ¶¶ 31, 32, 34 & 37.) This language corresponds to Claims 1, 2 and 3, which require a system that is capable of providing a customer with "a list of computerized central communications facilities permitting said customer to select and contact at least one other computerized central communications facility to request additional information relating to said goods or services."

2. The Hotel Defendants.

The Hotel Defendants all offer the ability to book hotel rooms through their websites. Variant identifies the Hotel Defendants' booking websites[4] as the accused instrumentalities. All but one Hotel Defendant operate actual hotels to which their websites are directed. The last company, TravelNet Solutions, is a vertical marketing firm for hotels and resorts. Among other things, TravelNet designs websites for hotels, including the accused website of co-Defendant Tanglewood Resorts. (*See* Geraci Decl. at ¶ 5, Ex. D (stating at the bottom of the Tanglewood Resorts website: "Designed by ResortsandLodges.com, a product of VEMGlobal.com").)

---

[4] Variant accuses the following websites for the ZaZa Hotel group (http://www.hotelzaza.com); the Extended Stay Hotel group (http://www.exstay.com, http://www.homesteadhotels.com, http://www.extendedstayamerica.com, http://www.extendedstaydeluxe.com, http://www.studioplus.com, and http://www.crosslandstudios.com); the Rosewood Hotel group (http://www.crescentcourt.com); the Tanglewood Resort (http://www.tanglewood.com [*sic*], presumably Variant meant http://www.tanglewoodresort.com); and TravelNet Solutions (http://www.resortsandlodges.com). Printouts from the Hotel Defendants' websites are attached as Exhibits A - E.

Some of the Hotel Defendants have connections to this District.  The Tanglewood Resort is in Pottsboro, Texas, which is in this District.  *See id*.  The Extended Stay Hotel defendants are headquartered in South Carolina and operate hotels across the country, including several in this District, in Plano.  (*See* Geraci Decl. at ¶ 3, Ex. B.)  The ZaZa Hotel defendants operate a hotel in Dallas and one in Houston.  (*See* Geraci Decl. at ¶ 2, Ex. A.)  The Rosewood Hotel defendants are headquartered in Dallas and operate two hotels in Dallas.  (*See* Geraci Decl. at ¶ 4, Ex. C.)  The last Hotel Defendant, TravelNet, is headquartered in Minnesota.  (*See* Geraci Decl. at ¶ 6, Ex. E.)  As mentioned, TravelNet designed the accused website for the Tanglewood Resort.

3. The Consumer Site Defendants.

The Consumer Site Defendants provide websites for consumers to compare different products, prices or businesses.  In its complaint, Variant accuses the Consumer Site Defendants' websites.[5]  The Nextag and Price Watch websites allow users to compare prices and find deals on products across the Internet.  (*See* Exs. F & G.)  The Nextag and Yelp websites allow users to review and compare products and businesses, respectively.  (*See* Exs. F & I.)  None of the Consumer Site Defendants has a presence in this District.  Both Nextag and Yelp are located in the San Francisco metropolitan Bay Area:  Nextag is in San Mateo and Yelp is in San Francisco.[6]  Price Watch is located in San Antonio.  None of the Consumer Site Defendants has any special connection to this District.

---

[5] Variant accuses the following websites for Nextag (http://www.nextag.com); Price Watch (http://www.pricewatch.com); StreetPrices.com (http://www.streetprices.com); and Yelp (http://www.yelp.com).  Printouts from the Consumer Site Defendants' websites are attached as Exhibits F - I.

[6] The fourth Consumer Site Defendant, StreetPrices.com, which Variant recently dismissed, is located in Santa Clara, California.

    4. <u>Variant.</u>

Variant has no connections to Texas or the Eastern District. Variant Holdings, LLC, the assignee of the '044 Patent, has a principal place of business in the Caribbean island of Nevis. (Complaint at ¶¶ 1 & 25.) Variant, Inc., the exclusive licensee of the '044 Patent, allegedly has a place of business in Wisconsin (Complaint at ¶¶ 2 & 25), but according to Wisconsin state records, Variant's principal office is in Chesterfield, Missouri—at the same address listed on the face of the patent as the address for the inventor, Stephen Wren. (Geraci Decl. at ¶ 12, Ex. J.) It appears that Mr. Wren still lives in Chesterfield, Missouri. He is prosecuting a child application of the '044 Patent *pro se*, and in a filing with the USPTO dated September 15, 2011, he listed the same address in Chesterfield. (Geraci Decl. at ¶ 13, Ex. K.)

## III. ARGUMENT

    1. <u>Joinder Is Improper in a Patent Case Where the Accused Products and Asserted Claims are Categorically Different.</u>

A plaintiff cannot automatically join several parties in a single action by simple virtue of accusing them all of infringing the same patent. Rather, the alleged infringing acts must "aris[e] out of the same transaction, occurrence, or series of transactions or occurrences." Fed. R. Civ. P. 20(a). The Federal Rules provide that the Court may add, drop or sever claims against a party when a plaintiff improperly joins parties in the same action. Fed. R. Civ. P. 21. The Court has broad discretion to sever claims. *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir. 2000). The requirements for joinder are specified in Rule 20. "Courts have described Rule 20 as creating a two-prong test, allowing joinder . . . when (1) their claims arise out of the same transaction, occurrence, or series of transactions or occurrences and when (2) there is at least one common question of law or fact linking all claims." *Acevedo v. Allsup's Convenience Stores, Inc.*, 600 F.3d 516, 521 (5th Cir. 2010).

Events arise out of the same transaction or occurrence when they are "logically related," and "a logical relationship exists between the alleged acts of infringement if there is some nucleus of operative facts or law." *Adrain v. Genetec Inc.*, 2:08-CV-423, 2009 WL 3063414, at *2 (E.D. Tex. Sept. 22, 2009); *see also Nasalok Coating Corp. v. Nylok Corp.*, 522 F.3d 1320, 1325-26 (Fed. Cir. 2008) (holding that two claims did not arise out of the same transaction or occurrence where "[t]he two claims raise different legal and factual issues, will not be supported or refuted by substantially the same evidence, and are not 'logically related'"). Infringement claims are not "logically related" just because the same patent is being asserted. *See Frank's Casing Crew & Rental Tools, Inc. v. PMR Technologies, Ltd.*, 292 F.3d 1363, 1372 & n.6 (Fed. Cir. 2002) (stating that claims against additional parties were "not authorized by the joinder rules" even though they were based on infringement of the same patent). This Court has found severance appropriate where the accused products are "dramatically different." *MyMail, Ltd. v. Am. Online, Inc.*, 223 F.R.D. 455, 457 (E.D. Tex. 2004); *see also Reid v. Gen. Motors Corp.*, 240 F.R.D. 260, 262 (E.D. Tex. 2007) (granting severance where the accused products were "sufficiently distinct").

Congress recently addressed the issue of joinder in patent cases in the newly enacted Leahy-Smith America Invents Act.[7] The new joinder provision largely tracks the language of

---

[7] The text of the new provision on joinder reads:

> With respect to any civil action arising under any Act of Congress relating to patents . . . parties that are accused infringers may be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, or counterclaim defendants only if —
>
> (1) any right to relief is asserted against the parties jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences **relating to the making, using, importing into the United States, offering for sale, or selling of the same accused product or process**; and

Rule 20, except that it clarifies that for patent cases the "same transaction or occurrence" must relate to "the same accused product or process." Although the American Invents Act does not apply to this case retroactively, the new law is an instructive expression of congressional policy on this issue.

    2. <u>The Consumer Site Defendants' Products are Dramatically Different from Those of the Hotel Defendants.</u>

Variant has improperly joined the Consumer Site Defendants in this case. Variant itself has divided the defendants into two categories in its complaint. It accuses the Hotel Defendants of providing information "regarding rentals," rather than allowing customers to "request additional information relating to goods or services," as charged against the Consumer Site Defendants. As discussed above, these different theories of infringement map to different claims of the '044 Patent. Variant's choice of language was not accidental. When Variant asserted the '044 Patent against eighty-three additional defendants on September 15, 2011, it accused all eighty-three defendants of infringement by "provid[ing] customer information regarding rentals," even though some of those defendants are hotel companies with websites for "renting rooms" and others are car rental companies with websites for "renting vehicles." But, although Variant has now made that infringement allegation against over ninety defendants, it has made no such allegation against the Consumer Site Defendants. Thus, this case is not like other cases where this Court has denied severance because in this case Variant has not "assert[ed] the same

---

    (2) questions of fact common to all defendants or counterclaim defendants will arise in the action."

35 U.S.C. § 299 (2011) (emphasis added). It further clarifies that, "accused infringers may not be joined in one action as defendants or counterclaim defendants, or have their actions consolidated for trial, based solely on allegations that they each have infringed the patent or patents in suit." *Id.*

7

allegation against each of the defendants." *Innovative Global Sys. LLC v. Tpk. Global Technologies L.L.C.*, 6:09-CV-157, 2009 WL 3754886, at *2 (E.D. Tex. Oct. 20, 2009).

The Consumer Site Defendants' products and services are fundamentally different from the Hotel Defendants'—there is no logical relationship between comparing prices and reviewing products or businesses on the one hand, and reserving hotel rooms on the other. Moreover, the fact that Variant is asserting different claims against the two groups means that different claim construction issues will be presented, and different prior art will be relevant. The Hotel Defendants will presumably focus on prior art regarding rentals. The Consumer Site Defendants will focus on the ability to request information regarding goods or services. Moreover, the different categories of defendants will be motivated to find prior art that more closely matches the different accused products. Here, as in *Reid*, "because the accused systems are different, 'the prior art key to [the defendant]'s invalidity defense and/or [the defendant]'s approach to its invalidity defense will thus necessarily be different . . . .'" *Reid*, 240 F.R.D. at 262 (holding that the accused products, described as "identity management systems" were "sufficiently distinct" to sever).

The issues and evidence related to infringement will be different too. For the Consumer Site Defendants, Variant will have to show that they infringe the '044 Patent by offering price comparisons or customer reviews. Variant's claims against the different defendants will not "be supported or refuted by substantially the same evidence" because they offer unrelated products. *Nasalok*, 522 F.3d at 1325-26. Each of the accused products was "designed independently, has a different architecture, and uses different software." *Reid*, 240 F.R.D. at 262.

### 3. The Center of Gravity of Variant's Case Against the Consumer Site Defendants Is in Northern California.

Once the Court severs the two groups of defendants, Variant's case against the Consumer Site Defendants has no logical nexus to this District, and there is no reason for it to be here. None of the parties has any substantial connection to the Eastern District. The plaintiff is in Missouri, two defendants are in Northern California, and one defendant is in the Western District of Texas. The case should be transferred to one of those courts. Of the three, the Northern District of California is the most convenient venue, and for that reason the Court should transfer Variant's claims against the Consumer Site Defendants to the Northern District of California.

"For the convenience of parties, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). When a party demonstrates that the transferee venue is "clearly more convenient," there is good cause to transfer a case. *See In re Volkswagen of Am., Inc.* ("*Volkswagen II*"), 545 F.3d 304, 315 (5th Cir. 2008) (en banc). Determining whether transfer is proper is a two-step process. The first step is to determine whether the suit could have been brought in the transferee district. *In re Volkswagen AG* ("*Volkswagen I*"), 371 F.3d 201, 203 (5th Cir. 2004). If the suit could have been brought in the transferee district, then the court must weigh the relative conveniences, both for the parties and for the public. The Fifth Circuit has prescribed several private and public interest factors to weigh in deciding whether the proposed district is more convenient. *Id.* The private interest factors are: (1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of non-party witnesses; (3) the cost of attendance for willing witnesses; and (4) all other practical problems that make trial of a case easy, expeditious and inexpensive. *Volkswagen II*, 545 F.3d at 315. The public interest factors are: (1) the administrative difficulties flowing from court congestion; (2) the local

9

interest in having localized controversies decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [in] the application of foreign law. *Id.* These factors are not necessarily exhaustive or exclusive, and no one is given greater weight than the others. *See Id.*

    4. <u>It Would Be Clearly More Convenient to Litigate the Claims Against the Consumer Site Defendants in the Northern District of California.</u>

When a suit against a subset of defendants could have been brought in a different district and the other district would have been more convenient, "the claims against those defendants may be severed and transferred while the other claims are retained in the original court." *Balthasar Online, Inc. v. Network Solutions, LLC*, 654 F. Supp. 2d 546, 549-50 (E.D. Tex. 2009) (citing *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir.1984)). Standing alone, Variant's case against the Consumer Site Defendants has no connection to the Eastern District. The center of gravity is in Northern California. *See*, *e.g.*, *ATEN Int'l Co. Ltd. v. Emine Tech. Co., Ltd.*, 261 F.R.D. 112, 126 (E.D. Tex. 2009) ("Since California is clearly the 'center of gravity' with respect to the witnesses and parties to this case, this factor weighs in favor of transfer."). Indeed, Variant appears to have joined the Consumer Site Defendants with the Texas-centric group of Hotel Defendants in order to influence the venue analysis. *Cf. Balthasar*, 654 F. Supp. 2d 546 (severing and transferring non-local defendants after the plaintiff added defendants who were located in the Eastern District following *TS Tech*).

    a. *Variant Could Have Filed Its Claims Against the Consumer Site Defendants in the Northern District of California.*

Venue would have been proper in the Northern District of California as to the Consumer Site Defendants. Two of the three Consumer Site Defendants have their principal place of business in the Northern District of California. (Geraci Decl. at ¶ 11.) Personal jurisdiction as to Nextag and Yelp would have been clear. And although Price Watch is based in San Antonio, its

accused website is accessible from all over the country, including in the Northern District of California. Since Variant's claims against Price Watch relate to the use of its website, specific personal jurisdiction and venue would have extended to the Northern District of California for the same reason that the defendants do not contest jurisdiction and venue in this District.

    *b. The Private Interest Factors Favor Transfer to the Northern District of California.*

On balance, it would be more convenient to litigate the case against the Consumer Site Defendants in the Northern District of California. Nextag and Yelp have their primary places of business in the Northern District of California. (*See* Exs. F & I; Schur Decl at ¶ 2.) Documents and witnesses relating to the accused websites would all be located in Northern California. (Schur Decl at ¶¶ 4-8.) By contrast, none of the Consumer Site Defendants has a presence in the Eastern District of Texas.[8] Nor do Variant, and the sole inventor, Mr. Wren, have any connection to the Eastern District of Texas. (Geraci Decl. at ¶¶ 12-13.) It would be no more convenient for Variant to litigate the case in Marshall from its locations in Nevis or Missouri than it would be to litigate in Northern California. All in all, the private interest factors favor transfer to Northern California. It would be significantly more convenient for two of the three defendants and no more or less convenient for the plaintiff.

    *c. The Public Interest Factors Favor Transfer to the Northern District of California.*

The public interest also supports transferring the case to the Northern District of California. Two of the three Consumer Site Defendants are based in Northern California. That district has a local interest in deciding suits involving its domiciliaries. The Eastern District of

---

[8] Price Watch appears to be located in San Antonio, Texas, which is in the Western District of Texas. (*See* Geraci Decl. at ¶ 14, Ex. L.) But Price Watch has not made an appearance in the case so far and it is not clear whether it will. Attempts to reach someone at Price Watch have been unfruitful. (*See* Geraci Decl. at ¶ 15.)

Texas has no local interest in Variant's suit against the Consumer Site Defendants. That factor weighs in favor of transfer. The other public interest factors are neutral. Judges in both districts have extensive experience and familiarity with patent law. And conflicting rulings between the districts will be minimized because the accused products are so different. Finally, the congestion of the courts in this district favors transfer. *See* James Pistorino, *Concentration of Patent Cases in Eastern District of Texas Increases in 2010*, 81 BNA Patent, Copyright & Trademark J. 803 (2011) ("[I]n 2010, the Eastern District of Texas led the United States in patent filings when looking at: (a) the number of cases; (b) the number of plaintiffs; (c) the number of defendants; (d) defendants per case; and (e) defendants per plaintiff."). Because most of the public interest factors are neutral, the Northern District of California's localized interest weighs in favor of transfer there.

## IV.   CONCLUSION

The accused products of the Consumer Site Defendants are dramatically different from those of the Hotel Defendants. Variant's case against the Consumer Site Defendants has no connection to the Eastern District of Texas. Accordingly, Yelp respectfully asks the Court to sever Variant's claims against Defendants Yelp, Nextag and Price Watch and transfer them to the United States District Court for the Northern District of California.

Dated: October 6, 2011                                              Respectfully submitted,


By:   */s/ Darby V. Doan*
 Daralyn J. Durie
 ddurie@durietangri.com
 **DURIE TANGRI LLP**
 217 Leidesdorff Street
 San Francisco, CA 94111
 Telephone:     415-362-6666
 Facsimile:      415-236-6300

        Jennifer Haltom Doan
        Texas Bar No.: 08809050
        Darby V. Doan
        Texas Bar No.: 00793622
        **HALTOM & DOAN**
        6500 Summerhill Road, Suite 100
        Texarkana, Texas 75503
        Telephone: 903-255-1000
        Facsimile: 903-255-0800
        jdoan@haltomdoan.com
        ddoan@haltomdoan.com

        Attorneys for Defendant YELP! INC.

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system. All other counsel of record will be served by certified mail, return receipt requested, this 6th day of October, 2010.

        */s/ Darby V. Doan*
        Darby V. Doan

## CERTIFICATE OF CONFERENCE

On the 6th day of October, 2011, counsel for Defendant, Kristie Wright, contacted, John Edmonds, counsel for Plaintiffs. Plaintiff's counsel informed Defendant's counsel that Plaintiffs are opposed to the relief requested in this Motion to Sever and Transfer.

        */s/ Darby V. Doan*
        Darby V. Doan