# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
### MARSHALL DIVISION

|  |  |
|---|---|
| VARIANT HOLDINGS, LLC AND VARIANT, INC. | |
| *Plaintiff*, | |
| v. | Case No. 2:11-cv-290-JRG **Jury Trial Demanded** |
| Z RESORTS LLC D/B/A HOTEL ZAZA; Z RESORTS MANAGEMENT, L.L.C. D/B/A HOTEL ZAZA; Z RESORTS, INC. D/B/A HOTEL ZAZA; TRANSFORMATION 5701, L.P. DBA HOTEL ZAZA HOUSTON; GIVENS-RECORDS DEVELOPMENT, LTD D/B/A HOTEL ZAZA DALLAS; ESA P PORTFOLIO L.L.C. D/B/A EXTENDED STAY HOTELS; HVM, LLC D/B/A EXTENDED STAY HOTELS; EXTENDED STAY AMERICA, INC. D/B/A EXTENDED STAY HOTELS; NEXTAG, INC.; PRICE WATCH CORP.; ROSEWOOD HOTEL INVESTMENTS, INC.; ROSEWOOD HOTELS AND RESORTS, L.L.C.; RRCC, L.P. D/B/A ROSEWOOD CRESCENT HOTEL; ROSEWOOD PROPERTY COMPANY D/B/A ROSWOOD MANSION ON TURTLE CREEK; THE CARLYLE, LLC D/B/A THE CARLYLE, A ROSEWOOD HOTEL; STREETPRICES.COM, INC. D/B/A STREETPRICES.COM CORP. D/B/A STREETPRICES.COM; TANGLEWOOD RESORT PROPERTIES, INC. D/B/A TANGLEWOOD RESORT; TRAVELNET SOLUTIONS, INC. AND YELP! INC. | |
| *Defendants*. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION OF DEFENDANT NEXTAG, INC. TO SEVER AND TRANSFER

Melissa Richards Smith
Texas State Bar No. 24001351
GILLAM & SMITH, L.L.P.
303 South Washington Avenue
Marshall, Texas 75670
Telephone: (903) 934-8450
Facsimile: (903) 934-9257
E-mail: melissa@gillamsmithlaw.com

-and-

Michael J. Scheer
Email: mscheer@winston.com
Peter Lambrianakos
Email: plambrianakos@winston.com
WINSTON & STRAWN, LLP
200 Park Avenue
New York, New York 10166
Telephone: (212) 294-6700
Facsimile: (212) 294-4700

*Attorneys for Defendant NexTag, Inc.*

## TABLE OF CONTENTS

PAGE

I.      Introduction ................................................................................................................1

II.     Statement of Facts .....................................................................................................2

    A.      Variant's Allegations of Patent Infringement Against NexTag ............................2

    B.      NexTag Is A California Company with No Connection to This District. ..............3

    C.      The Northern District of California Is a More Convenient Forum than this
    District ......................................................................................................................4

    D.      Variant Has No Connection to This District ..........................................................4

III.    Argument ....................................................................................................................5

    A.      This Court Should Sever Variant's Claims Against NexTag from Its Claims
    Against the Other Defendants. ................................................................................5

        1.      Legal Standard Under Rules 20(a)(2) and 21. ............................................5

        2.      Variant's Claims Against NexTag Fail the First Prong of Rule 20(a)(2)
        Because They Do Not Arise from the Same Transaction, Occurrence,
        or Series of Transactions or Occurrences as Its Claims Against Any
        of the Other Defendants. ..............................................................................6

    B.      The Court Should Transfer the Severed Claims Against NexTag to the Northern
    District of California. ..............................................................................................9

        1.      Legal Standard for Transfer under 35 U.S.C. 1404(a) ...............................9

        2.      Variant Could Have Brought Its Claims Against NexTag
        in the Northern District of California ..........................................................10

        3.      The Four Private Interest Factors Weigh Heavily in Favor
        of Transfer ..................................................................................................11

            a.      Relative Ease of Access to Sources of Proof. ................................11

            b.      Availability of Compulsory Process to Secure Attendance
            of Witnesses. ...................................................................................12

            c.      Cost of Attendance for Willing Witnesses ....................................13

            d.      All Other Practical Problems. ........................................................14

    C.      On Balance, the Four Public Interest Factors Weigh in Favor of Transfer. ..........14

    D.      The Northern District of California Is a Forum "Clearly More Convenient"
    for Variant's Claims Against NexTag Than the Eastern District of Texas. ..........16

IV.     Conclusion ...............................................................................................................16

i

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*Crockett v. R.J. Reynolds Tobacco Co.*,
  436 F.3d 529 (5th Cir. 2006) ................................................................5

*In re EMC Corp.*,
  Misc. No. 100, 2012 WL 1563920 (Fed. Cir. May 14, 2012) ........................................ passim

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009).................................................................. passim

*In re Horseshoe Entm't.*,
  337 F.3d 429 (5th Cir. 2003) ................................................................14

*In re Nintendo Co., Ltd.*,
  589 F.3d 1194 (Fed. Cir. 2009)...................................................................9

*In re TS Tech. USA Corp.*,
  551 F.3d 1315 (Fed. Cir. 2008)..................................................................10, 13, 15

*In re Verizon Business Network Services Inc.*,
  No. 956, 2011 WL 1026623 (Fed. Cir. Mar. 23, 2011) .........................................11

*In re Volkswagen AG*,
  371 F.3d 201 (5th Cir. 2004) ............................................................9, 13

*In re Volkswagen of America, Inc.*,
  545 F.3d 304 (5th Cir. 2008) .................................................................... passim

*On Semiconductor Corp. v. Hynix Semiconductor Corp.*,
  No. 6:09-CV-390, 2010 WL 3855520 (E.D. Tex. Sept. 30, 2010).........................................11

*United States v. O'Neil*,
  709 F.2d 361 (5th Cir. 1983) ................................................................9

STATUTES

28 U.S.C. § 1331...............................................................................10

28 U.S.C. § 1391(c) ...........................................................................10

28 U.S.C. § 1404(a) ............................................................................ passim

**OTHER AUTHORITIES**

7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, <u>Federal Practice and Procedure,</u> § 1653 (3d ed. 2001 & Supp. 2005).........................................................................5

Fed. R. Civ. P. 20(a) ............................................................................................................ passim

Defendant NexTag, Inc. ("NexTag") hereby moves for an Order, pursuant to Rules 20(a)(2) and 21 of the Federal Rules of Civil Procedure, to sever the claims of Plaintiffs Variant Holdings, LLC and Variant, Inc. (collectively, "Variant") against Defendant NexTag, Inc. ("NexTag") and transfer the severed claims against NexTag to the United States District Court for the Northern District of California pursuant to 28 U.S.C. § 1404(a).

## I.    INTRODUCTION

This is a patent infringement case against NexTag and 18 other Defendants unrelated to NexTag.  NexTag should not have been joined in this action because the only connection between NexTag and the other Defendants is Variant's allegation that they infringe the same patent.  Variant does not allege that the Defendant have acted in concert or that its claims of infringement by the accused websites of the Defendants share an aggregate of operative facts that would constitute the "same transactions" as required by Rule 20 of the Federal Rules of Civil Procedure.  In view of the Federal Circuit's recent decision in *In re EMC Corp.*[1], NexTag was improperly joined as a Defendant under Rule 20, and Variant's claims against NexTag should be severed.

Once severed, Variant's action against NexTag should be transferred to the Northern District of California to 28 U.S.C. § 1404(a).  Variant's suit against NexTag could have been brought there, and the Northern District of California is a more convenient forum because NexTag's witnesses and the bulk of the evidence relating to the claims are located there.  By contrast, this action has little connection to this District because neither the parties nor any potential evidence, with the exception of some documents from a previous action brought by Variant, is located here.  Accordingly, the factors considered in determining whether to transfer an action under section 1404(a) strongly favor transfer to the Northern District of California.

---

[1] Misc. No. 100, 2012 WL 1563920 (Fed. Cir. May 14, 2012).

## II.   STATEMENT OF FACTS

### A.   VARIANT'S ALLEGATIONS OF PATENT INFRINGEMENT AGAINST NEXTAG.

Variant filed its complaint on June 16, 2011, accusing 19 Defendants of infringing U.S. Patent No. 7,624,044 ("the '044 Patent").   Paragraph 31 of the Complaint contains all of the substantive infringement allegations against NextTag.   (D.I. 1 ("Complaint") ¶ 31.)   In that paragraph, Variant alleges that NexTag's website, www.nextag.com, infringes the '044 Patent by providing information regarding goods and services offered by third parties.   (Complaint ¶ 31.)

The Complaint does not include any allegations, nor is there any evidence, that NexTag and any of the other Defendants are related or are jointly liable for patent infringement, that there is a relationship between NexTag and any other Defendant, that NexTag and any other Defendant use identically sourced components, that there are any licensing or technology agreements between NexTag and any other Defendants, that there is overlap between the development of NexTag's and any other Defendant's website, or that Variant has experienced lost profits.   Instead, each Defendant or Defendant group is individually accused of infringement through their respective ownership or sponsorship of their own websites.   (*See, e.g.*, Complaint ¶¶ 29-37.)   Moreover, except to use the same boilerplate language from the patent claims to allege infringement as to all of the Defendants (Complaint ¶ 28), and to allege infringement against those Defendants whose websites offer information regarding goods and services (Complaint ¶¶ 31, 32, 34, 37), Variant does not allege that NexTag's website is the same as the other Defendants' websites.   In fact, the Complaint is devoid of any description of NexTag's website.

### B.   NEXTAG IS A CALIFORNIA COMPANY WITH NO CONNECTION TO THIS DISTRICT.

NexTag maintains its principal place of business at 2955 Campus Drive, Suite 300, San Mateo, California.  (Declaration of Bahman Koohestani ("Koohestani Decl.") ¶ 2.)  The accused website, www.nextag.com, was originally planned and developed by NexTag employees in San Mateo.  (*Id.* ¶ 3.)  Through June 2011, all planning, architecture and development of the accused website was performed in San Mateo.  (*Id.*)  Since 2011, a very limited portion of the development of the accused website has occurred in Chicago and India, but all other development and all planning and architecture continue to be performed in San Mateo.  (*Id.*)  As such, the vast majority of the NexTag employees involved in the planning, architecture and development of the accused website work and live in the San Mateo area.  (*Id.*)  Source code and other documents relating to the www.nextag.com site, including financial information, are maintained at the San Mateo facility.  (*Id.* ¶ 6.)

Several former employees who were involved in the development and implementation of the website reside in California.  (*Id.* ¶ 5.)  Three of these individuals are Rafael Ortiz (co-founder and former Chief Marketing Officer), Claire Hough (former Vice President of Engineering), and Scott Simmons (former company President).  (*Id.*)  These witnesses are under no contractual obligation to cooperate with NexTag in this matter. (*Id.*)  Moreover, Defendant Yelp has identified prior art inventors located in California who could be subpoenaed to appear at trial, including Lawrence Abrahams, inventor of U.S. Patent No. 5,347,632 (D.I. 47-1 ¶ 8, Ex. S (San Francisco Bay Area)), Lawrence B. Lockwood, inventor of U.S. Patent No. 5,576,951 (D.I. 47-1 ¶ 9, Ex. T (La Jolla, CA)), Charles H. Ferguson, inventor of U.S. Patent No. 5,819,092 (D.I. 47-1 ¶ 10, Ex. U (Berkeley, CA)), and Joshua Kaplan, inventor of the iStation interactive kiosk (D.I. 47-1 ¶ 11, Ex. V (San Francisco Bay Area)).

NexTag has no facilities in this District and is unaware of any witnesses or evidence located in this District. (Koohestani Decl. ¶ 6.)

### C.   THE NORTHERN DISTRICT OF CALIFORNIA IS A MORE CONVENIENT FORUM THAN THIS DISTRICT.

NexTag's office in San Mateo is approximately 24 miles by car from San Francisco Courthouse in the Northern District of California.   (Declaration of Peter Lambrianakos ("Lambrianakos Decl.") at Ex. 1.)   By contrast, the trip from NexTag's office to Marshall, Texas involves, at minimum, a 11-mile drive from NexTag's offices to the San Francisco Airport (Lambrianakos Decl. at Ex. 2), an approximately 6-hour flight from San Francisco to Shreveport with one stop (Lambrianakos Decl. at Ex. 3), and a 34-mile drive from Shreveport to Marshall. (Lambrianakos Decl. at Ex. 4.)

### D.   VARIANT HAS NO CONNECTION TO THIS DISTRICT.

Variant has no connections to Texas or the Eastern District.   Variant Holdings, LLC, the assignee of the '044 Patent, has a principal place of business in the Caribbean island of Nevis. (Complaint ¶¶ 1, 25.)   Variant, Inc., the exclusive licensee of the '044 Patent, allegedly has a place of business in MacFarland, Wisconsin.   (Complaint ¶¶ 2, 25; D.I. 46-2 ¶ 2.)   According to Wisconsin state records, Variant's principal office is in Chesterfield, Missouri—at the same address listed on the face of the patent as the address for the inventor, Stephen Wren.   (D.I. 45-2 ¶ 12, Ex. J.)   Mr. Wren claims that he works in Chesterfield, Missouri.   (D.I. 46-2 ¶ 3.)   He is prosecuting a child application of the '044 Patent *pro se*, and in a filing with the USPTO dated September 15, 2011, he listed the same address in Chesterfield. (D.I. 45-2 ¶ 13, Ex. K.)

Variant claims to maintain documents relating to the '044 Patent and its prior litigation in three locations, two of which, St. Louis, Missouri and Houston, Texas, are outside of this District.   (D.I. 46-2 ¶ 4.)   The Variant documents in this District are present as a result of prior

litigation.  (D.I. 46-2 ¶ 4.)  Variant has not identified any witnesses in this District or for whom this District would be more convenient than the Northern District of California.

## III.   ARGUMENT

### A.   THIS COURT SHOULD SEVER VARIANT'S CLAIMS AGAINST NEXTAG FROM ITS CLAIMS AGAINST THE OTHER DEFENDANTS.

#### 1.   LEGAL STANDARD UNDER RULES 20(A)(2) AND 21.

Rule 21 of the Federal Rules of Civil Procedure states that, "[o]n motion or on its own, the court may at any time, on just terms, add or drop a party.  The court may also sever any claim against a party."  Severance is appropriate where joinder is improper, i.e., where a plaintiff fails to satisfy both of the requirements that Rule 20(a)(2) imposes for joining multiple defendants in a single action.  *Crockett v. R.J. Reynolds Tobacco Co.*, 436 F.3d 529, 533 (5th Cir. 2006).

Federal Rule of Civil Procedure 20(a)(2) states:

> Persons . . . may be joined as defendants in one action if:
>
> > (a) any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and
> >
> > (b) any question of law or fact common to all defendants will arise in the action.

Joinder is improper if a plaintiff's pleadings and allegations do not satisfy *both* prongs of Rule 20(a)(2)'s two-prong test.  *In re EMC Corp.*, Misc. No. 100, 2012 WL 1563920, at *4 (Fed. Cir. May 14, 2012); 7 Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 1653 (3d ed. 2001 & Supp. 2005) (stating that Rule 20(a)(2) "imposes two specific requisites to the joinder of parties" and "[b]oth of these requirements must be satisfied in order to sustain party joinder under Rule 20(a)").

Under the Federal Circuit's recent ruling in *In re EMC Corp.*, two elements must be met in order to satisfy the transaction-or-occurrence test of Rule 20(a)(2).   First, aspects of the accused products or processes which are relevant to the patent must be the same.   "Joinder of independent defendants *is only appropriate* where the accused products or processes are the same in respects relevant to the patent." *In re EMC Corp.*, 2012 WL 1563920, at *7 (emphasis added).   "[J]oinder is not appropriate where different products or processes are involved." *Id.*

Second, "the claim of infringement asserted against each defendant [must] share an aggregate of operative facts." *Id.*   These are "shared, overlapping facts that give rise to each cause of action, not just distinct, albeit coincidentally identical, facts." *Id.*   Pertinent factual considerations include:

> whether the alleged acts of infringement occurred during the same time period, the existence of some relationship among the defendants, the use of identically sourced components, licensing or technology agreements between the defendants, overlap of the products' or processes' development and manufacture, and whether the case involves a claim for lost profits.

*Id.*

    **2.**    **VARIANT'S CLAIMS AGAINST NEXTAG FAIL THE FIRST PRONG OF RULE 20(A)(2) BECAUSE THEY DO NOT ARISE FROM THE SAME TRANSACTION, OCCURRENCE, OR SERIES OF TRANSACTIONS OR OCCURRENCES AS ITS CLAIMS AGAINST ANY OF THE OTHER DEFENDANTS.**

Variant's claims against NexTag fails to satisfy the transaction-or-occurrence test of Rule 20(a)(2) because the Defendants' respective accused products are not alleged to be the same, and the claims against the Defendants do not share an aggregate of operative facts.

    **a.**    **VARIANT'S CLAIMS FAIL THE "SAMENESS" TEST.**

Variant's claims do not satisfy the "sameness" requirement because the Complaint presents no factual allegations suggesting that NexTag's accused website is the same as any

6

other Defendant's accused website in respects relevant to the asserted patent.  The Complaint uses mere boilerplate language mimicking the language of claim 2 of the '044 Patent to allege infringement by all of the Defendants (D.I. 1 ¶ 28), and by those Defendants whose websites offer information regarding goods and services (D.I. 1 ¶¶  31, 32, 34, 37).[2]  "[T]he mere fact that infringement of the same claims of the same patent is alleged does not support joinder even though the claims would raise common questions of claim construction and patent validity."  *In re EMC Corp.*, 2012 WL 1563920, at *5. The Complaint simply alleges that all of the accused websites infringe the same patent, and does not allege that the accused products or processes are the same in respects relevant to the asserted patent.  In fact, the Complaint provides no guidance whatsoever regarding the features of the accused websites, much less whether any of the features relevant to the patents are the same across the accused products or processes.  As such, the record is devoid of any evidence supporting Variant's joinder of the Defendants.

Under the Federal Circuit's recent decision in *In re EMC Corp.*, the mere allegation that multiple parties infringe the same patent is insufficient to support joinder.  The court rejected the "not dramatically different" standard precisely because it "seems to require little more than the existence of some similarity in the allegedly infringing products or processes, similarity which would exist simply because the same patent claims were alleged to be infringed."  *Id.* at *6. Similarly, joinder cannot be proper in this case because the Complaint establishes only that the accused products infringe the same patent.  Having failed to plead any facts concerning the features of the accused websites, Variant has not pleaded any facts showing that the accused products themselves are the same in respects relevant to the patent.

---

[2] The Consumer Site Defendants were defined in Yelp's motion to sever and transfer as NexTag, Yelp and Price Watcher.  (D.I. 45 at 1.)

### b.    VARIANT'S CLAIMS FAIL THE "AGGREGATE OF OPERATIVE FACTS" TEST.

Even if NexTag's accused website is the same as the other Defendants' websites in respects relevant to the patent, joinder in this case was nevertheless improper because the alleged infringement by NexTag and the remaining Defendants does not share an aggregate of operative facts.

The Complaint contains no allegations supporting a conclusion that there is an actual link between the acts underlying the claims of infringement against NexTag and any of the other Defendants.  The Complaint does not allege that (1) the acts of infringement occurred during the same time period; (2) a relationship exists between NexTag and other Defendants; (3) NexTag and other Defendants used identically sourced components; (4) NexTag has licensing or technology agreements with other Defendants; (5) NexTag's website development overlaps with other Defendants' website development; and (6) Variant, as a non-practicing entity, has a bona fide claim for lost profits.

As such, under *In re EMC Corp.*, even if all of the Defendants had, by sheer coincidence, developed identical websites, joinder would be improper because Variant's claims against the Defendants do not share an aggregate of operative facts.  *See EMC Corp.*, 2012 WL 1563920, at *7 ("Unless there is an actual link between the facts underlying each claim of infringement, independently developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical.")  Accordingly, Variant's claims of infringement against NexTag should be severed from its claims against the remaining Defendants.

**B.    THE COURT SHOULD TRANSFER THE SEVERED CLAIMS AGAINST NEXTAG TO THE NORTHERN DISTRICT OF CALIFORNIA.**

**1.    LEGAL STANDARD FOR TRANSFER UNDER 35 U.S.C. 1404(A)**

Once severed under Rule 21, improperly or unfairly joined claims "proceed[] as a discrete, independent action."  *United States v. O'Neil*, 709 F.2d 361, 368 (5th Cir. 1983) (abrogated on other grounds).  In this case, Variant's infringement action against NexTag should be transferred to the Northern District of California because the severed action has no connection with this forum, and venue in the Northern District of California is clearly more convenient under all the factors that govern transfer under § 1404(a).

Pursuant to 28 U.S.C. § 1404(a), a district court may, "[f]or the convenience of parties and witnesses, in the interest of justice, . . . transfer any civil action to any other district or division where it might have been brought."  A party seeking transfer must demonstrate that the transferee venue is "clearly more convenient" than the plaintiff's chosen venue.  *In re Nintendo Co., Ltd.*, 589 F.3d 1194, 1197 (Fed. Cir. 2009) (citing *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009)).

In analyzing whether transfer is appropriate, a district court's first inquiry is "whether the judicial district to which transfer is sought would have been a district in which the claim could have been filed."  *In re Volkswagen AG*, 371 F.3d 201, 203 (5th Cir. 2004) ("*In re Volkswagen I*").  If that threshold is met, the court must then analyze four private-interest factors and four public-interest factors relating to the convenience of the parties and witnesses to determine whether transfer is appropriate.  *In re Volkswagen of America, Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) ("*In re Volkswagen II*"); *In re Nintendo*, 589 F.3d at 1198.  The private factors are: "(1) the relative ease of access to sources of proof; (2) the availability of compulsory process to secure the attendance of witnesses; (3) the cost of attendance for willing witnesses; and (4) all

other practical problems that make a trial easy, expeditious and inexpensive." *In re Genentech*, 566 F.3d at 1342 (quoting *In re TS Tech. USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008)). The public factors are: "(1) the administrative difficulties flowing from court congestion; (2) the local interest in having localized interests decided at home; (3) the familiarity of the forum with the law that will govern the case; and (4) the avoidance of unnecessary problems of conflict of laws [or in] the application of foreign law." *Id.* (quoting *TS Tech*, 551 F.3d at 1319.)   A plaintiff's choice of venue is not a factor in the section 1404(a) analysis and is considered subsumed in the defendant's burden of proving that a proposed venue is "clearly more convenient." *In re Volkswagen II*, 545 F.3d at 315.

### 2.   VARIANT COULD HAVE BROUGHT ITS CLAIMS AGAINST NEXTAG IN THE NORTHERN DISTRICT OF CALIFORNIA.

The threshold inquiry under Section 1404(a), whether suit could have been brought in the proposed forum, is satisfied because Variant could have brought his claims against NexTag in the Northern District of California.   Subject matter jurisdiction, personal jurisdiction and venue are all proper in that district.   Subject matter jurisdiction exists because Variant asserts its claims under federal patent law and, pursuant to 28 U.S.C. § 1331, all federal courts, including those in the Northern District of California, have federal question jurisdiction over the claims.   NexTag is subject to personal jurisdiction in the Northern District of California because its principal place of business is in that district.   (Koohestani Decl. ¶ 2.)   Venue is proper because an action may be brought wherever a defendant "resides."   *See* 28 U.S.C. §§ 1391(c); 1400(b).   Because NexTag is subject to personal jurisdiction in the Northern District of California, it is deemed to reside in that district.   *See id*. § 1391(c).

### 3.   THE FOUR PRIVATE INTEREST FACTORS WEIGH HEAVILY IN FAVOR OF TRANSFER.

On balance, the four private-interest factors, which relate principally to the accessibility of evidence, overwhelmingly favor transfer.  The evidence that NexTag supplies will come from the Northern District of California, whereas little evidence, if any, from Variant is located in the Eastern District.

#### a.   RELATIVE EASE OF ACCESS TO SOURCES OF PROOF.

The resolution of this factor "will turn upon which party, usually the accused infringer, will most probably have the greater volume of documents relevant to the litigation and their presumed location in relation to the transferee and transferor venues."  *On Semiconductor Corp. v. Hynix Semiconductor Corp.*, No. 6:09-CV-390, 2010 WL 3855520, at *2 (E.D. Tex. Sept. 30, 2010) (citing *In re Volkswagen II*, 545 F.3d at 314-15); *In re Genentech*, 566 F.3d at 1345 ("[T]he bulk of the relevant evidence usually comes from the accused infringer" and thus "the place where the defendant's documents are kept weighs in favor of transfer to that location."). Here, neither Variant nor this suit has any connection with the Eastern District of Texas. NexTag, as the accused infringer, likely possesses the greater volume of relevant documents, all of which are located in the Northern District of California.  (Koohestani Decl. ¶ 6.)  Thus, the ease-of-access-to-proof factor overwhelmingly supports transfer there.

The two Variant entities are located on the Caribbean island of Nevis and in MacFarland, Wisconsin, and the inventor of the '044 Patent works in Chesterfield, Missouri.  (D.I. 46-2 ¶¶ 1-3.)  Variant's only connection between to the Eastern District of Texas has been through two other patent cases filed in this district.  (D.I. 46 at 11 n.7.)  However, those suits, and any documents located in this District as a result of those suits, are irrelevant to evaluating this case's connection to the Eastern District under the "relative ease of access to proof" factor of the §

1404(a) analysis because the sources of proof on which the inquiry is focused do *not* include "artifacts" of other litigation in a forum where the plaintiff has "no employees" or other meaningful business operations. *See In re Verizon Business Network Services Inc.*, No. 956, 2011 WL 1026623, at *2 (Fed. Cir. Mar. 23, 2011). Thus, any evidence that Variant supplies in this case which may be considered in this analysis will likely come from St. Louis, Missouri and Houston, Texas. (D.I. 46-2 ¶ 4.)

In stark contrast, NexTag has its principal place of business in San Mateo, California, in the Northern District of California. (Koohestani Decl. ¶ 2.) The accused website, www.nextag.com, was originally planned and developed by NexTag employees in San Mateo. (*Id.* ¶ 3.) Through June 2011, all planning, architecture and development of the accused website was performed in San Mateo. (*Id.*) Since 2011, a very limited portion of the development of the accused website has occurred in Chicago and India, but all other development and all planning and architecture continue to be performed in San Mateo. (*Id.*) As such, the vast majority of the NexTag employees involved in the planning, architecture and development of the accused website work and live in the San Mateo area. (*Id.*) Source code and other documents, including financial information, relating to the www.nextag.com site are maintained at the San Mateo facility. (*Id.* ¶ 6.) NexTag has no places of business that are located in the Eastern District. (*Id.* ¶ 7.) In short, none of NexTag's evidence will come from the Eastern District of Texas.

Accordingly, Section 1404(a)'s evidentiary convenience factors strongly favor transfer.

### b. AVAILABILITY OF COMPULSORY PROCESS TO SECURE ATTENDANCE OF WITNESSES.

This factor also strongly favors transfer. Compulsory process to secure the attendance of witnesses, including third parties, is available in the Eastern District of Texas and in the Northern District of California. However, while Yelp has identified several witnesses in California who

are subject to subpoena issues in the Northern District of California—Lawrence Abrahams, inventor of U.S. Patent No. 5,347,632 (D.I. 47-1 ¶ 8, Ex. S (San Francisco Bay Area)), Lawrence B. Lockwood, inventor of U.S. Patent No. 5,576,951 (D.I. 47-1 ¶ 9, Ex. T (La Jolla, CA)), Charles H. Ferguson, inventor of U.S. Patent No. 5,819,092 (D.I. 47-1 ¶ 10, Ex. U (Berkeley, CA)), and Joshua Kaplan, inventor of the iStation interactive kiosk (D.I. 47-1 ¶ 11, Ex. V (San Francisco Bay Area))—Variant has not identified a single third-party located in the Eastern District of Texas.  Moreover, several former employees who were involved in the development and implementation of the www.nextag.com site and who are not obligated to cooperate with NexTag in this matter are currently located in California, including Rafael Ortiz (co-founder and former Chief Marketing Officer), Claire Hough (former Vice President of Engineering), and Scott Simmons (former company President).  (Koohestani Decl. ¶ 5.)

### c.   COST OF ATTENDANCE FOR WILLING WITNESSES.

The Fifth Circuit has adopted a "100 mile rule" to provide guidance with respect to this factor: "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *In re Volkswagen I*, 371 F.3d at 204-05.  The "100 mile rule" favors transfer if the transferee venue is, on average, closer to witnesses than the transferor venue.  *In re Volkswagen II*, 545 F.3d at 317; *In re TS Tech*, 551 F.3d 1320.

In this case, considerations related to the convenience for and cost of attendance for witnesses weigh heavily in favor of transfer.  Most, if not all, of NexTag's witnesses are located in the Northern District of California.  (Koohestani Decl. ¶ 3.)  None of the witnesses are located in the Eastern District.  (*Id.* ¶ 7.)  Application of the "100 mile rule" favors transfer because the

distance from Shreveport Regional Airport, near Marshall, Texas, to San Francisco International Airport, near San Mateo, California, is approximately 1,650 miles.  (*see* Lambrianakos Decl. Ex. 5), and the travel time and costs for NexTag's witnesses traveling from San Mateo to Marshall, which entails an 11-mile drive, a 34-mile drive, and a six-hour airplane flight, will be substantial in comparison to the convenience of litigating this case in San Francisco.  (*See* Lambrianakos Decl. Exs. 1-4.)   Among  other  things,  there  are  no  non-stop  commercial  flights,  (*see* Lambrianakos Decl. ¶ 4, Ex. 3), and forcing numerous NexTag witnesses to undertake this commute would not only have direct costs in the form of travel time and expense, but also indirect costs in the form of lost productivity.  (Koohestani Decl. ¶ 4.)

On the other hand, transfer to the Northern District of California will not affect the travel times or costs for the inventor, Stephen Wren, who works outside of Texas.  (D.I. 46-2 ¶ 3.) Variant's witnesses are likely outside Texas and would be "required to travel a significant distance  no  matter  where  they  testify."  *In  re  Genentech*,  566  F.3d  at  1344  (discounting insignificant difference in travel for foreign witnesses).

### d.  ALL OTHER PRACTICAL PROBLEMS.

As the Fifth Circuit has observed, this "practical" or "economy" factor is entitled to weight only "in rare and special circumstances" that are "established by clear and convincing evidence." *See In re Horseshoe Entm't.*, 337 F.3d 429, 434 (5th Cir. 2003).  Variant's claims against NexTag present no practical problems that favor this District, much less tip the balance of the entire multi-factor transfer inquiry away from the Northern District of California.

### C.  ON BALANCE, THE FOUR PUBLIC INTEREST FACTORS WEIGH IN FAVOR OF TRANSFER.

The factor related to a forum's local interest in having localized interests decided at home overwhelmingly favors transfer.  The Northern District of California has a substantial interest in

Variant's claim against NexTag.  Again, NexTag is located in the Northern District of California and any alleged infringement is related to activities there.  In contrast, the Eastern District of Texas has a *de minimis* interest in deciding Variant's claims.  The mere accessibility of NexTag's accused website in this District is insufficient to create a localized interest such that Variant's claims should be decided in this district.  *See In re Volkswagen II*, 545 F.3d at 318 (finding that the notion that residents in the Eastern District would have an interest in a product liability case simply because the accused product was available in the district "stretches logic in a manner that eviscerates the public interest that [the localized interest] factor attempts to capture"); *TS Tech*, 551 F.3d at 1321 (finding that where the accused products are "sold throughout the United States, . . . the citizens of the Eastern District of Texas have no more or less of a meaningful connection to this case than any other venue").

The remaining three factors are neutral.  The factor related to the transferor and transferee courts' familiarity with the relevant law is neutral, because courts in the Eastern District of Texas and Northern District of California are equally competent to decide patent infringement cases. Similarly, the factor regarding issues related to conflicts of law and foreign law is neutral, because Variant's claims do not present any such issues.

The administrative-difficulties-flowing-from-court-congestion factor is neutral because there is no significant difference in the average time that this District and the Northern District of California dispose of cases (23.2 months vs. 30.3 months).  (Lambrianakos Decl. Exs. 6, 7.) Moreover, even if this difference in time to trial were significant and not "speculative," as characterized by the Federal Circuit in *In re Genentech*, it should not outweigh the fact that three private factors and one public factor weigh in favor of transfer, the remaining factors being neutral.  *In re Genentech*, 566 F.3d at 1347.

Thus, on balance, the public interest factors weigh in favor of transfer.

**D.   THE NORTHERN DISTRICT OF CALIFORNIA IS A FORUM "CLEARLY MORE CONVENIENT" FOR VARIANT'S CLAIMS AGAINST NEXTAG THAN THE EASTERN DISTRICT OF TEXAS.**

Consideration of the section 1404(a) private and public interest factors demonstrates that the Northern District of California is a venue "clearly more convenient" than this District. Moreover, *none* of the factors weighs against transfer.  This Court should therefore transfer Variant's severed claims against NexTag to the Northern District of California.

**IV.   CONCLUSION**

For the foregoing reasons, Defendant NexTag, Inc. respectfully requests that this Court grant its motion to sever and transfer pursuant to Rules 20(a)(2) and 21 of the Federal Rules of Civil Procedure and 28 U.S.C. § 1404(a).

Dated:  June 15, 2012

Respectfully submitted,

By:   *s/Melissa Richards Smith*
    Melissa Richards Smith
    Texas State Bar No. 24001351
    GILLAM & SMITH, L.L.P.
    303 South Washington Avenue
    Marshall, Texas 75670
    Telephone: (903) 934-8450
    Facsimile: (903) 934-9257
    E-mail: melissa@gillamsmithlaw.com

    -and-

    Michael J. Scheer
    Email: mscheer@winston.com
    Peter Lambrianakos
    Email: plambrianakos@winston.com
    WINSTON & STRAWN, LLP
    200 Park Avenue
    New York, New York 10166
    Telephone: (212) 294-6700
    Facsimile: (212) 294-4700
    *Attorneys for Defendant NexTag, Inc.*

16