IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

VARIANT HOLDINGS, LLC
AND VARIANT, INC.

v.                                                    NO. 2:11-cv-290-JRG

Z RESORTS LLC, ET AL.                                 JURY

**PLAINTIFFS' RESPONSE TO NEXTAG'S MOTION TO SEVER
AND REQUST FOR ORAL HEARING**

Plaintiffs Variant Holdings, LLC and Variant, Inc. (collectively, "Variant") respectfully

respond to the Motion to Sever filed by NexTag, Inc. ("NexTag"), Doc. No. 69, as follows:

## I.    INTRODUCTION.

1.      This case involves U.S. Patent No. 7,624,044 ("the '044 Patent"). Ex. A.  Plaintiff

Variant Holdings, LLC is the assignee of the '044 patent. Ex. B (Wren Declaration).  Plaintiff

Variant, Inc. is the exclusive licensee of the '044 patent. *Id.*

2.      Defendant NexTag has moved to sever itself from this case, and premised upon

that severance, has also moved to transfer venue to the Northern District of California

("NDCA").  In the first instance, NexTag's motion should be denied as untimely, because it

waited almost *eleven months* to file its motion.  Irrespective of the foregoing, NexTag has failed

to meet its burden of proving that severance is appropriate.  As set forth herein, Plaintiff's claims

meet the "sameness" test and the "aggregate of operative facts" test of Rule 20.

3.      By contemporaneous filing herewith, Variant is responding separately to

NexTag's Motion to Transfer Venue, which also lacks merit.

## II.      FACTUAL BACKGROUND.

4.       This case involves U.S. Patent No. 7,624,044 ("the '044 Patent"). Ex. A.  Plaintiff Variant Holdings, LLC is the assignee of the '044 patent. As set forth in Variant's Complaint, the present[1] defendants in the case are (1) NexTag, which is based in San Mateo, California; (2) Zaza,[2] which is based in Dallas and Houston, Texas;  (3) Extended Stay,[3] which is based in Spartanburg, South Carolina; (4) Price Watch Corp. ("Price Watch"), which is based in San Antonio, Texas; (5) Rosewood,[4] which is based in Dallas, Texas; (6) Tanglewood, which is based in Pottsboro, Texas; (7) TravelNet Solutions Inc., which is based in Cottage Grove, Minnesota; and (8) Yelp, which is based in San Francisco, California.

5.       Relative to each defendant, Variant's complaint alleges infringement of the '044 patent "through actions comprising. . ."  In this case, Variant is asserting at least claims 2, 3, 4, 14, 16, 17 and 18 against Zaza, Extended Stay, NexTag, Rosewood, Tanglewood, Travelnet and Yelp; and Variant is asserting at least claims 2, 3, 4 and 5 against Price Watch. Ex. C (Edmonds Declaration).

6.       For purposes of the issues before the Court, one need only look at exemplary claims 2 and 3 to determine that Variant's claims against the Defendants (1) arise out of the same transaction, occurrence, or series of transactions or occurrences and (2) involve a question of law or fact common to all defendants.  Each of claims 2 and 3 cover: (1) an apparatus to market and/or sell goods or services over an electronic network comprising: (2) a ***first computerized***

---

[1] Streetprices is no longer a party to the case due to a stipulated dismissal.
[2] As noted in the Complaint, several related defendants, i.e., Z Resorts LLC, Z Resorts, Inc., Transformation 5701, LP and Givens-Records Development , collectively referred to as "Zaza."
[3] As noted in the Complaint, related defendants ESA Portfolio LLC and Extended Stay America, Inc. are collectively referred to as "Extended Stay."
[4] As noted in the Complaint, several related defendants, i.e., Rosewood Hotel Investments, Inc., Rosewood Hotels and Resorts, LLC; RRCC, LP, Rosewood Property Company and The Carlyle, LLC., are collectively referred to as "ROSEWOOD."

*central communications facility* (*e.g.*, a server which accesses a database – hereinafter, a "CCCF" or "server") adapted to be linked (*e.g.*, via the internet)  to a computerized remote facility ("CRF") (*e.g.*, a customer's PC) and to a plurality of *other CCCFs* (*e.g.*, others' servers, including servers of other defendants in this case); (3) each of said *first or other CCCFs* having information relating to goods or services stored in a database, (4) and each of said *first or other CCCF* having a processor programmed to: (4)(a) receive from a customer located at said computerized remote facility a request to at least one of search, browse and access in said database at said *first or other CCCF* for information of interest; (4)(b) enable said customer to at least one of search, browse and access said database for information of interest; and (4)(c) transmit said information of interest from the database at said CCCF.

7.     Aside from elements (1) – (4), claim 2 has two additional elements, which are: (5)(a) wherein *at least one of said CCCF* is adapted to provide to customers at computerized remote facilities a list of CCCFs permitting said customer to select and contact at least one *other CCCF* to request additional information relating to said goods or services; and (6)(a) wherein said processor is further programmed to download software from said CCCF to said RCF, said software adapted to present information of interest to said customer.

8.     Thus claim 2 is infringed when one uses a "first" CCCF which is adapted to be linked to CRFs and to a plurality of "other" CCCFs, provided that the "first" CCCF has information relating to goods or services stored in a database; that the "first" CCCF has a processor programmed to perform the receiving, performing and transmitting steps; and that the "first" CCCF is adapted/programmed to further perform the permitting and downloading steps. Although Variant has not yet served infringement contentions,[5] its infringement contentions in

---

[5] This case is currently awaiting its turn for a scheduling conference.  Further, two related cases involving the same '044 patent are also awaiting their turn for a scheduling conference.  Those cases are Variant, Inc. et al v. AMERCO

this case comprise each defendant using a "first" CCCF linked to the "other" CCCFs of the other defendants (and to CRFs), wherein the defendant's (*e.g.*, NexTag's) "first" CCCF performs the above steps. Ex. C (Edmonds Declaration).   Such infringement is illustrated by the following:



9.      Furthermore, and alternatively, claim 2 is infringed when one uses a "first" CCCF which is adapted to be linked to CRFs and to a plurality of "other" CCCFs, provided that at least one of the "other" CCCFs has information relating to goods or services stored in a database; that the "other" CCCF has a processor programmed to perform the receiving, performing and transmitting steps; and that the "other" CCCF is adapted/programmed to further perform the permitting and downloading steps.   Although Variant has not yet served infringement contentions, its infringement contentions in this case also comprise each defendant using a "first" CCCF linked to the "other" CCCFs of the other defendants (and to CRFs), wherein each of the "other" CCCFs of the other defendants performs the above steps.   Such infringement is illustrated by the following:

et al., No. 2:11-cv-00427-JRG, which was filed on 09/15/11; and Variant Holdings LLC et al v. Hilton Hotels Holdings, et al., which was filed on 09/15/11.

4



10.     Aside from elements (1) – (4) in common with claim 2, claim 3 has an additional element, which is: (7) wherein said processor is further programmed to download software from said CCCF to said RCF; and said software adapted to enable said customer to conduct a transaction using the information provided by said CCCF relating to goods or services.

11.     Thus claim 3 is infringed when one uses a "first" CCCF which is adapted to be linked to CRFs and to a plurality of "other" CCCFs, where the "first" CCCF has information relating to goods or services stored in a database; where the "first" CCCF has a processor programmed to perform the receiving, performing and transmitting steps; and where the "first" CCCF is adapted/programmed to further perform the downloading software step.  Although Variant has not yet served infringement contentions, its infringement contentions in this case comprise each defendant using a "first" CCCF linked to the "other" CCCFs of the other defendants (and to CRFs), wherein the "first" CCCF (*e.g.*, NexTag's) performs the above steps. Such infringement is illustrated by the following:



12.     Furthermore, and alternatively, claim 3 is infringed when one uses a "first" CCCF which is adapted to be linked to CRFs and to a plurality of "other" CCCFs, provided that at least one of the "other" CCCFs has information relating to goods or services stored in a database; that the "other" CCCF has a processor programmed to perform the receiving, performing and transmitting steps; and that the "other" CCCF is adapted/programmed to further perform the downloading software step.  Although Variant has not yet served infringement contentions, its infringement contentions in this case also comprise each defendant using a "first" CCCF linked to the "other" CCCFs of the other defendants (and to CRFs), wherein each of the "other" CCCFs of the other defendants performs the above steps.  Such infringement is illustrated by the following:



13.     Exemplary of this is the server which provides NexTag's website at www.nextag.com.   NexTag's server is linked to the other defendants' servers, and to its customers' PCs (i.e. CRF's), via the internet.   NexTag's server has a database with information relating to at least goods.   Exemplary product information from NexTag's database, which is viewable at www.nextag.com, is as follows:



14.     NexTag's server also has a processor programmed to receive from a customer located at a CRF a request to at least one of search, browse and access information of interest in NexTag's database (element (4)(a)). This is exemplified by the query bar and menus above. NexTag's server also has a processor programmed to enable customers to search, browse and access NexTag's database for information of interest (element (4)(b)).   This is also exemplified by the searchable/browsable query bar and menus above.   NexTag's server also has a processor programmed to transmit the information of interest from the database at NextTag's CCCF (element (4)(c)).   This is also exemplified by the screen shot above.   Further, NexTag's CCCF is adapted to provide to customers at CRFs a list of CCCFs permitting said customers to select and contact at least one CCCF to request additional information relating to said goods.   For example, the "See Store" buttons above are hyperlinks to websites of other merchants.   If a customer

clicks on the exemplary "See Store" button the customer is taken to Texas Poker Supply's website at http://texaspokersupply.com/gold-metallic-horseshoe-18-inch/, as exemplified by the following screen shots:



and

15.     Further, NexTag's CCCF is programmed to download software to RCFs which is adapted to present information of interest to customers.  This software includes, for example, the software necessary to enable a browser to render the following image (among numerous others):



16.     Thus, NextTag infringes claim 2 at least by using a "first" CCCF (*i.e.*, its own server(s)) which is adapted to be linked to CRFs and to a plurality of "other" CCCFs (including the "other" CCCFs of NextTag's co-defendants); because NextTag's "first" CCCF has information relating to goods or services stored in a database; a processor programmed to perform the receiving, performing and transmitting steps; and it is adapted/programmed to further perform the permitting and downloading steps.

17.     Furthermore, and alternatively, NextTag infringes claim 2 at least by using a "first" CCCF (*i.e.*, its own server(s)) which is adapted to be linked to CRFs and to a plurality of "other" CCCFs (including the "other" CCCFs of NextTag's co-defendants); because the "other" CCCFs of NextTag's co-defendants have information relating to goods or services stored in a database; a processor programmed to perform the receiving, performing and transmitting steps; and they are  adapted/programmed to further perform the permitting and downloading steps.

18.     Exemplary of this is the server which serves up defendant Yelp's website at www.yelp.com.  Yelp's server is linked to the other defendants' servers (*e.g.*, Extended Stay's), and to its customers' PCs, via the internet.  Yelp's server has a database with information

9

relating to goods and/or services.  Exemplary service information from Yelp's database, which is

viewable at www.yelp.com, is as follows:



and



and



19.    Yelp's server also has a processor programmed to receive from a customer located at a CRF a request to at least one of search, browse and access information of interest in Yelp's database (element 4(a). This is exemplified by the query bar and menus above.  Yelp's server also has a processor programmed to enable customers to search, browse and access Yelp's database for information of interest (element (4)(b)).   This is also exemplified by the searchable/browsable query bar and menus above.   Yelp's server also has a processor programmed to transmit the information of interest from the database at Yelp's CCCF (element (4)(c)).  This is also exemplified by the screen shot above.

20.    Further, Yelp's CCCF is adapted to provide to customers at CRFs a list of CCCFs permitting said customers to select and contact at least one CCCF to request additional information relating to said goods. For example, if a customer clicks on the URL for Extended Stay (http://www.extendedstayamerica.com), the customer is taken to defendant Extended Stay's website, as exemplified by the following screen shots:



and



21.     Further, Yelp's CCCF is further programmed to download software to RCFs which adapted to present information of interest to customers, for example the software necessary to enable a browser to render the following image:



22.     Thus, NextTag infringes claim 2 by using a "first" CCCF which is adapted to be linked to CRFs and to a plurality of "other" CCCFs (including the "other" CCCFs of NextTag's co-defendants such as Yelp); because the "other" CCCFs of NextTag's co-defendants, for example, Yelp, have information relating to goods or services stored in a database; a processor programmed to perform the receiving, performing and transmitting steps; and they are adapted/programmed to further perform the permitting and downloading steps.

23.     Regarding claim 3, as already demonstrated above, claims 2 and 3 already share four common elements (i.e., elements (1) – (4) above.).  Thus, it has already been demonstrated how NextTag infringes the first four elements of claim 3 by using its "first" CCCF.  As also noted above, the element of claim 3 that differs from claim 2 is that claim 3 comprises the processor being further programmed to download software from the CCCF to RCFs, with the software being adapted to enable customers to conduct transactions using the information provided by the CCF.

24.     Thus, focusing on the additional element of claim 3, NextTag infringes claim 3 by virtue of its "first" CCCF comprising a processor being further programmed to download software from the CCCF to RCFs, with the software, for example,  being adapted to enable

13

customers to conduct a transaction using the information provided by the CCCF.   This functionality is illustrated by the following screen shot from www.nextag.com:



25.     Furthermore, and alternatively, (and again focusing on the additional element of claim 3) NexTag infringes claim 3 by virtue of its "first" CCCF being linked to "other" CCCFs which use a processor further programmed to download software from the "other" CCCF to RCFs, with the software, for example, being adapted to enable customers to conduct a transactions using the information provided by the CCF.   This functionality is exemplified by NexTag's co-defendant Yelp, including the following screen shot from www.yelp.com:



and



## III.   ARGUMENT.

### A.   NexTag's motion should be denied as untimely.

26.   As a threshold matter, NexTag's motion should be denied as untimely.  NexTag was served with process back in July 2011 and it answered Variant's complaint on August 2, 2011 (Doc. No. 15).  Yet NexTag waited over ten months, until June 15, 2012, to file its untimely motion.  Thus, NexTag's motion constitutes an improper delay tactic which it chose to file as this case is approaching its turn for a scheduling conference.  On the basis of its untimeliness alone, the motion should be denied.

### B.   Aside from the untimeliness of NexTag's motion, it fails on the merits, and severance would be inappropriate.

27.   When considering a motion to sever under Rule 21, "courts have looked to Rule 20 for guidance." *In Re EMC Corp.,* 677 F.3d 1351, 1356 (Fed. Cir. 2012); *Acevedo v. Allsup's Convenience Stores, Inc.,* 600 F.3d 516, 521 (5th Cir. 2010). Defendants may be joined in a

single action if the two independent requirements of Rule 20 are satisfied: (1) the claims against them must be asserted "with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) there must be a "question of law or fact common to all defendants." Fed.R.Civ.P. 20(a)(2).

28.     "Under the Rules, the impulse is towards entertaining the broadest possible scope of action consistent with fairness of the parties; joinder of claims, parties and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966). *See Microunity Systems Engineering v. Acer*, 2:10–CV–91–TJW–CE, 2011 WL 4591917, *3  (E.D.Tex. Sept. 30, 2011) (quoting *Gibbs*); *Oasis Research v. Adrive*, 4:10–CV–435; 2011 WL 3099885, *2 (E.D.Tex. May 23, 2011) (quoting *Gibbs*).

29.     Since NexTag's Motion focuses solely on the "sameness test" and the "aggregate of operative facts test," Variant will also focus on these issues.

**C.      The "sameness" test is satisfied, including because there is evidentiary overlap in the facts giving rise to the cause of action against each defendant.**

30.     The first prong of the analysis is the "sameness test," which determines whether the claims against the multiple joined defendants arise out of the "same" transaction, occurrence, or series of transactions or occurrences. *Microunity*, 2011 WL 4591917, *3.  In the present case, as illustrated in Section II above, each defendant infringes exemplary claims 2 and 3 when it uses its "first" CCCF which is linked to the "other" CCCFs of the other defendants.  Specifically, each defendant infringes exemplary claim 2 when its "first" CCCF is linked to the "other" CCCFs of its co-defendants and when its "first" CCCF" has information relating to goods or services stored in a database; a processor programmed to perform the receiving, performing and transmitting steps; and it is   adapted/programmed to further perform the permitting and downloading steps.  Further, each defendant infringes exemplary claim 2 when its "first" CCCF

16

is linked to the "other" CCCFs of its co-defendants and when one or more of the "other" CCCFs of its co-defendants has information relating to goods or services stored in a database; a processor programmed to perform the receiving, performing and transmitting steps; and it is adapted/programmed to further perform the permitting and downloading steps.

31.     Regarding exemplary claim 3, as already demonstrated above, claims 2 and 3 already share four common elements (*i.e.*, elements (1) – (4)).   Thus, it has already been demonstrated how NextTag infringes the first four elements of claim 3 by using its "first" CCCF. As also noted above, the element of claim 3 that differs from claim 2 is that claim 3 comprises the processor being further programmed to download software from the CCCF to RCFs, with the software, for instance, being adapted to enable customers to conduct transactions using the information provided by the CCCF.

32.     Thus, focusing on the additional element of claim 3, each defendant infringes claim 3 when its "first" CCCF has a processor being further programmed to download software from the "first" CCCF to RCFs, with the software, for instance, being adapted to enable customers to conduct transactions using the information provided by the CCF.   Further, each defendant infringes exemplary claim 3 when its "first" CCCF is linked to the "other" CCCFs of its co-defendants and when one or more of the "other" CCCFs of its co-defendants has a processor being further programmed to download software from the "first" CCCF to RCFs, with the software, for instance, being adapted to enable customers to conduct transactions using the information.

33.     NextTag's motion suggests that the defendants in this case are "independent" of each other because they are separate companies with their own websites.  However, as explained above, the infringement of each defendant, while not dependent on any other party, including not

being dependent on any other defendant, is inextricably factually tied to the infringement of its

co-defendants.   In particular, the CCCFs of all the defendants are linked over the internet.

Further, each defendant infringes exemplary claims 2 and 3 by virtue of its "first" CCCF being

linked to at least the "other" CCCFs of its co-defendants.

34.     Further, even to the extent that the defendants are "independent defendants" under

*EMC,* "[i]ndependent defendants satisfy the transaction-or-occurrence test of Rule 20 when there

is a logical relationship between the separate causes of action." *In Re EMC Corp.,* 677 F.3d at

1358.  "The logical relationship test is satisfied if there is substantial evidentiary overlap in the

facts giving rise to the cause of action against each defendant." *Id.*   "In other words, the

defendants' allegedly infringing acts, which give rise to the individual claims of infringement,

must share an aggregate of operative facts." *Id.*

35.     As illustrated above, each defendants' infringing acts give rise to individual

claims of infringement.   In particular, each defendant infringes exemplary claims 2 and 3 by

virtue of its "first" CCCF" being linked to at least the "other" CCCFs of its co-defendants.

36.     Further, as illustrated above, each defendants' infringing acts share an aggregate

of operative facts."  In particular, each defendant infringes exemplary claims 2 and 3 by virtue of

its "first" CCCF" being linked to at least the "other" CCCFs of its co-defendants.

37.     Further, as illustrated above, the use of the defendants linked CCCFs, where each

use constituting an infringing act, constitutes the same transaction or occurrence, as well as the

same series of transactions or occurrences.

38.     "To be part of the "same transaction" requires shared, overlapping facts that give

rise to each cause of action, and not just distinct, albeit coincidentally identical, facts." *Id.* Unless

there is an actual link between the facts underlying each claim of infringement, independently

developed products using differently sourced parts are not part of the same transaction, even if they are otherwise coincidentally identical." *Id.* Here, overlapping facts give rise to each cause of action, and there is an actual link between the facts underlying each claim for infringement. As noted above, NexTag infringes exemplary claims 2 and 3 because its server is linked to at least the servers of the other defendants, for example Yelp. In this instance, NexTag's server is the "first" server and Yelp's is the "second" server. Conversely, Yelp infringes exemplary claims 2 and 3 because its server is linked to at least the servers of the other defendants, for example NexTag. In this instance, Yelp's server is the "first" server and NexTag's is the "second" server. In both situations, the methods and servers are the same.

39.     Further, in the *EMC* case, the Federal Circuit held that "joinder of independent defendants is only appropriate where the accused products or processes are the same in respects relevant to the patent." *Id.* at 1350. Here, the accused processes are the same in those respects. As noted above, NexTag infringes exemplary claims 2 and 3 because its server is linked to at least the servers of the other defendants, for example Yelp. In this instance, NexTag's server is the "first" server and Yelp's is the "second" server. Conversely, Yelp infringes exemplary claims 2 and 3 because its server is linked to at least the servers of the other defendants, for example NexTag. In this instance, Yelp's server is the "first" server and NexTag's is the "second" server. In both situations, the methods and apparatus are the same.

40.     Thus, in the present case, the "sameness test" is satisfied, including because the "logical relationship" test is satisfied and the "transaction or occurrence" test is satisfied.

**D.      The "aggregate of operative facts" test is satisfied, including because there is evidentiary overlap in the facts giving rise to the cause of action against each defendant.**

41.     The *EMC* Court also held that, "claims against independent defendants (i.e., situations in which the defendants are not acting in concert) cannot be joined under Rule 20's transaction-or-occurrence test unless the facts underlying the claim of infringement asserted against each defendant share an aggregate of operative facts." *Id.*  Here, there is an aggregate of operative facts based upon the overlapping methods and linked servers of the defendants.  As noted above, NexTag infringes exemplary claims 2 and 3 because its server is linked to at least the servers of the other defendants, for example Yelp.  In this instance, NexTag's server is the "first" server and Yelp's is the "second."  Conversely, Yelp infringes exemplary claims 2 and 3 because its server is linked to at least the servers of the other defendants, for example NexTag. In this instance, Yelp's server is the "first" server and NexTag's is the "second."  Therefore, the claims of infringement asserted against defendants, for example Nextag and Yelp, do share an aggregate of operative facts and joinder is proper.

42.     "In addition to finding that the same product or process is involved, to determine whether the joinder test is satisfied, pertinent factual considerations include whether the alleged acts of infringement occurred during the same time period and the existence of some relationship among the defendants. *Id.* at 1359-60. "The district court enjoys considerable discretion in weighing the relevant factors." *Id.* at 1360.  Here, the infringement has occurred over the same time period because the servers of the defendants have been linked together by the internet at all relevant times.  Further, the defendants have a relationship because their websites can be contacted from one another.  For example, as noted above, one can from Yelp's website select and contact Extended Stay's website.

43.     Ultimately, a trial court has broad discretion regarding whether to sever. *Anderson v. Red River Waterway Comm'n*, 231 F.3d 211, 214 (5th Cir.2000); *Oasis Research ,* 2011 WL

3099885, *2.  That discretion should be used to deny the motion.  Aside from the lack of legal or factual support for the motion, the Court should consider that NexTag is proposing to split this case and send its part to California.  Further, this Court is also currently presiding over two other lawsuits involving Variant's allegations of infringement of the '044 patent against different parties.[6]  "The existence of multiple lawsuits interpreting the same patent creates an unnecessary risk of inconsistent claim construction and adjudication." *Oasis Research* , 2011 WL 3099885, *3; *Adrain*, 2009 WL 3063414 at *7.   "Besides being a duplicative use of scarce judicial resources, [multiple] claim constructions risk inconsistency, create greater uncertainty regarding the patent's scope, and impede the administration of justice." *Oasis Research* , 2011 WL 3099885, *3; *MyMail*, 223 F.R.D. at 458.

## IV.    Conclusion.

44.     NexTag's Motion should be denied as untimely.   Further, even on the merits, NexTag has failed to meet its burden of proving that severance is appropriate.

## V.    Request for Oral Hearing.

45.     In order to correctly decide NexTag's Motion to Sever and also Yelp's pending Motion to Sever, it is important for the Court to understand exemplary claims 2 and 3 of the '044 patent, and how the claims against each defendant are factually intertwined with the claims against the other defendants.  Thus, Plaintiffs' respectfully request that the Court conduct an oral hearing over NexTag and Yelp's Motion to Sever at its earliest convenience.

---

[6] Those cases are styled *Variant, Inc. et al v. AMERCO, et al.*, No. 2:11-cv-00422-JRG and *Variant Holdings LLC et al. v. Hilton Hotels Holdings*, No. 2:11-cv-00427-JRG.

July 5, 2012

Respectfully submitted,

COLLINS, EDMONDS & POGORZELSKI, PLLC

By: /s/ *John J. Edmonds*
John J. Edmonds – Lead Counsel
Texas Bar No. 789758
Stephen F. Schlather
Texas Bar No. 24007993
COLLINS, EDMONDS & POGORZELSKI, PLLC
1616 S. Voss Road, Suite 125
Houston, Texas 77057
Telephone: (281) 501-3425
Facsimile: (832) 415-2535
jedmonds@cepiplaw.com
sschlather@cepiplaw.com

Andrew W. Spangler
Texas Bar No. 24041960
Spangler Law P.C.
208 N. Green Street, Suite 300
Longview, Texas 75601
(903) 753-9300
(903) 553-0403 (fax)
spangler@spanglerlawpc.com

ATTORNEYS FOR PLAINTIFFS
VARIANT HOLDINGS, LLC AND
VARIANT, INC.

## CERTIFICATE OF SERVICE

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served with a copy of this document via the Court's CM/ECF system per Local Rule CV-5(a)(3).

July 5, 2012

/s/ *John J. Edmonds*
John J. Edmonds